IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| Lynn A. Joy, | ) |
|       Plaintiff, | ) ) ) |
| vs. | ) No. 02 C 4989 |
| Hay Group, Inc., a Delaware corporation, and HG (Bermuda) Limited, a Bermuda limited liability company, | ) Judge Guzman ) ) ) |
|       Defendants. | ) |

FILED MAY 2 1 2003 WP
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Lynn A. Joy, by her attorneys in this regard, Luke DeGrand, Tracey L. Wolfe, and Susan E. Cox of the law firm of LUKE DEGRAND & ASSOCIATES, P.C., respectfully submits this memorandum in support of her motion for summary judgment against defendants Hay Group, Inc. ("HGI" or the "Company") and HG (Bermuda) Limited ("HG Bermuda").

*Introduction*

Ms. Joy worked for HGI as an executive compensation consultant for six years, from April 1996 to April 2002, when she was fired, allegedly for failing to generate a sufficient level of revenue for the Company. The terms of her employment were contained in an employment agreement which provided that, in the event of her termination for reasons other than cause, she would receive guaranteed severance equal to one year of base pay, plus health insurance premiums. "Cause" was not defined.

After terminating Ms. Joy's employment, HGI refused her requests for the severance guaranteed by the employment agreement. Ms. Joy filed this action to recover her severance, her

61

guaranteed minimum bonus and to resolve her relationship (including an alleged non-competition obligation) with HGI's owner, HG Bermuda.

Both the HGI executive who drafted the employment agreement, and the HGI executive who signed it for the Company, have stated that the term "cause" used in the employment agreement was limited to the following circumstances: conviction of a felony which materially and demonstrably damages the Company, willful misconduct which materially and demonstrably damages the Company or impairs the value of the employee's services to the Company, or theft of Company property. This definition is consistent with a model agreement drafted by HGI and used in its executive compensation practice. It is not disputed that, utilizing this definition, HGI did not have "cause" for terminating Ms. Joy's employment. She is entitled to her severance as a matter of law.

### *Undisputed Facts*

Prior to joining HGI on April 26, 1996, Ms. Joy was employed by Hewitt Associates where she worked with E. Webb Bassick IV and Anna Tapling in the executive compensation practice area. At Hewitt, both Ms. Tapling and Ms. Joy reported to Mr. Bassick (SUF 7).[1] Sometime in April 1996, Mr. Bassick advised Ms. Joy that he had agreed to launch an executive compensation practice for HGI (SUF 8). The discussions that surrounded HGI's hiring of Mr. Bassick included the potential for HGI hiring Ms. Joy and Ms. Tapling (SUF 9).

David W. Lacey, then HGI's Vice President of Human Resources, drafted the employment agreements that were offered to and executed by Mr. Bassick, Ms. Tapling and Ms. Joy (SUF 23). In April 1996, prior to the execution of the agreement, Mr. Lacey attended a meeting at O'Hare

---

[1] Plaintiff's Local Rule 56.1(a) Statement of Material Facts Not in Dispute is cited herein as "SUF ___."

International Airport in Chicago, Illinois, the purpose of which was to discuss the terms of the three proposed agreements. Mr. Lacey, Mr. Bassick and Terry Lynch, then HGI's head of North American Operations, attended this meeting (SUF 22, 24). During the meeting, Mr. Bassick noted that the proposed agreements contemplated severance in the event of a termination of employment for reasons other than "cause," and that the term "cause" was not defined in the agreements. Mr. Bassick asked what was meant by that term as it was used in the three employment agreements. Mr. Lynch initially responded jokingly with words to the effect of "it would include if I found you sleeping with my wife." Messrs. Lynch and Lacey, on behalf of HGI, then explained to Mr. Bassick that the term was intended to apply to serious wrongdoing such as misappropriation of Company funds or property, fraud, gross malfeasance or some sort of criminal conduct (SUF 25).

Mr. Bassick then shared with Mr. Lacey and Mr. Lynch language contained in other executive employment agreements, encountered in the course of consulting on executive compensation, which defined cause as limited to the following circumstances: conviction of a felony which results in material and demonstrable damage to the Company or impairs the value of the employee's services; willful misconduct which results in material and demonstrable damage to the Company; or the theft of Company property. In response to Mr. Bassick's inquiry, Messrs. Lynch and Lacey assured Mr. Bassick that the term "cause" as used in the employment agreements of Mr. Bassick, Ms. Tapling and Ms. Joy, was intended to be no broader than this definition (SUF 26).

According to both Mr. Lacey, who drafted the agreements on behalf of HGI, and Mr. Bassick, who signed Ms. Joy's Employment Agreement on behalf of HGI, the term "cause" as used in the employment agreements of Webb Bassick, Anna Tapling and Lynn Joy was not intended to encompass a termination of employment due to unsatisfactory performance or a failure to meet

targeted revenue or billings goals (SUF 26-29). Rather, "cause" meant the circumstances described during the 1996 O'Hare Meeting (*Id.*).

Mr. Bassick then invited Ms. Joy and Ms. Tapling to his home to discuss their respective employment agreements (SUF 30). During this meeting, the parties discussed HGI's commitment with respect to bonus payments for Ms. Joy and Ms. Tapling. Mr. Bassick stated that the annual incentive target for both of them would be 60% of salary, with a minimum of 30% of salary and a maximum of 100% of salary (SUF 31). The parties also discussed the fact that the term "cause" was not defined in the severance provision contained in the employment agreements. Mr. Bassick stated that the term "cause" as used in the employment agreements meant "if there's a conviction of a felony that damages the company or damages the employee's ability to work, if there is willful misconduct that materially damages the company or if the employee materially steals from the company" (SUF 32).

Ms. Joy signed the employment agreement on or about April 26, 1996, and that agreement governed her employment until HGI fired her on April 9, 2002 (SUF 11-12). The Employment Agreement provided, among other things, that if HGI "decided to end your employment for reasons other than cause, the severance package will equal one year of base salary plus health benefit continuation" (SUF 13). The Employment Agreement also provided that Ms. Joy was to receive an annual bonus of between 30% and 100% of her base salary, with a target bonus of 60% (SUF 15).

Ms. Joy's employment was terminated on April 9, 2002 (SUF 34). In the letter terminating her employment, HGI stated that Ms. Joy's employment was being "terminated for cause on April 9, 2002" (SUF 35), but instead of the one year of severance provided for in her Employment Agreement, the termination letter offered her (in exchange for a complete release): "five (5) weeks

base pay, which includes two (2) weeks notice, payable as salary continuation, payable on regularly scheduled Hay Group payroll dates, beginning on the first such payroll date after receipt by Hay Group of the countersigned original of this Separation Agreement and expiration of the revocation period referenced below" (SUF 36). Ms. Joy refused to sign the termination letter (SUF 37).

Although the termination letter did not explain the reasons for terminating Ms. Joy's employment (other than to state that it was for "cause") (SUF 39), HGI has explained the decision in this litigation as follows:

> HGI terminated Plaintiff's employment because her performance was unsatisfactory, in that she failed to maintain the levels of billing, utilization and sales required of an employee in her position and failed successfully to complete performance improvement plans addressing these deficiencies.

(SUF 40).

HGI did not pay Ms. Joy any severance in connection with the termination of her employment (SUF 45), nor did it provide her with the continuation of health insurance benefits contemplated by the Employment Agreement (SUF 46). After her termination, HGI provided her with two weeks' notice pay (SUF 38), and subsequently paid her a bonus for fiscal year 2001 in the amount of $36,400 (SUF 47). HGI did not pay Ms. Joy a bonus for fiscal year 2002, though she worked for HGI for half of that year (SUF 48-49).

In a template prepared by HGI for use as a "Model Employment Agreement" in connection with its executive compensation practice, HGI defined "cause" in connection with the termination of employment as follows: conviction of a felony (or plea of no contest) involving material and demonstrable damage to the employer or the value of the employee's services, or willful misconduct "which is demonstrably willful and materially and demonstrably damaging to the Company..." (SUF 50-51).

Ms. Joy has, through her counsel, made written demand upon HGI for payment of Ms. Joy's severance more than three days before this action was brought (SUF 58).

### *Argument*

### I. STANDARD OF REVIEW

"Summary judgment is proper 'if the pleadings, depositions, answers to the interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Pearman v. Whitman*, No. 01 C 2158, 2002 WL 31749178, *6 (N.D. Ill. Dec. 5, 2002) (quoting F.R.C.P. 56(c); *Cox v. Acme Health Services, Inc.*, 55 F.3d 1304, 1308 (7th Cir. 1995)). A genuine issue of material fact exists when the record evidence, when viewed together with reasonable inferences to be drawn therefrom, is such that a reasonable jury could return a verdict in favor of the non-moving party. *Newton v. Chicago School Reform Bd. of Trustees*, No. 96 C 7078, 2000 WL 136712, *8 (N.D. Ill. Sept. 13, 2000). The movant has the burden of establishing that there is no genuine issue of material fact; once that burden is met, it is incumbent upon the non-movant to set forth specific facts demonstrating the existence of a genuine issue of material fact. *Id.* "A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

Contract interpretation, including the question of whether a contract is ambiguous, involves a question of law for the court to determine. *See Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998); *Florida East Coast Ry. Co. v. CSX Transp., Inc.*, 42 F.3d 1125, 1128 (7th Cir. 1994).

## II. BOTH THE INDIVIDUAL WHO DRAFTED THE EMPLOYMENT AGREEMENT ON HGI'S BEHALF, AND THE EXECUTIVE WHO SIGNED IT FOR HGI, HAVE ACKNOWLEDGED THE DEFINITION OF CAUSE AS USED IN THE EMPLOYMENT AGREEMENT. PLAINTIFF IS ENTITLED TO HER CONTRACTUAL SEVERANCE AS A MATTER OF LAW.

On this record, there is no dispute that the term "cause" is susceptible to more than one reasonable interpretation. In fact, HGI's own documents establish varying definitions of the term. In the HGI "Model Employment Agreement," for example, the Company utilized a definition that limited the circumstances for which an executive could be terminated for "cause" to conviction of a felony or willful misconduct that results in material and demonstrable damage to the Company (SUF 50-51) -- essentially the definition Ms. Joy was assured was intended in connection with her Employment Agreement (SUF 30-33). HGI has put forth a different definition for purposes of this litigation, essentially taking the position that the term "cause" means whatever the employer chooses it to mean (SUF 17 - referencing HGI's answers to interrogatories which define "cause" as any acts or omissions that are "inconsistent with the relationship of employer and employee ... including but not limited to unsatisfactory performance").

The courts have recognized that the term is susceptible to more than one reasonable interpretation as well. *See, e.g., Farley, Inc. v. Chiappetta*, 163 B.R. 999, 1011 (N.D. Ill. 1994) (construing the undefined term "cause" in connection with the termination of employment to include "incompetence and inability to effectuate [Debtor's] acquisition plans," rejecting "both extremes -- either a highly restrictive conception (matters such as theft or other illegal or immoral activity) or an essentially standardless one (termination at [the employer's] whim"); *Dunning v. Chemical Waste Management, Inc.*, No. 91 C 2502, 1997 WL 222891, *3 (N.D. Ill. April 24, 1997) (cause defined in two ways: first, as any illegal, immoral or dishonest conduct which damages the employer, and second, the failure to substantially perform the job duties after provision of written notice and an

opportunity to cure); *Bishop v. Lakeland Animal Hospital, P.C.*, 268 Ill. App. 3d 114, 117, 644 N.E.2d 33, 36 (2nd Dist. 1994) (citation omitted) ("some substantial shortcoming, recognized by law and public opinion as a good reason for termination").

A contract is ambiguous if it is susceptible to more than one meaning. *See Bock v. Computer Associates Intern., Inc.*, 257 F.3d 700, 706 (7th Cir. 2001). Such a contract "as a matter of law must be construed against the drafter." *Bishop*, 268 Ill. App. 3d at 117, 644 N.E.2d at 36. *See also Bourke v. Dun & Bradstreet Corporation*, 159 F.3d 1032, 1036 (7th Cir. 1998) ("any ambiguity in the terms of a contract must be resolved against the drafter of the disputed provision"); *Tranzact Technologies, Ltd. v. Evergreen Partners, Ltd.*, No. 00 C 3215, 2001 WL 1035338, *7 (N.D. Ill. Sept. 7, 2001) (same); *Mitchem v. GFG Loan Co.*, Nos. 99 C 1866, 99 C 3075, 99 C 3158, 99 C 3665, 99 C 3981, 2000 WL 294119, *9 (N.D. Ill. March 17, 2000) ("A fundamental tenet of contract interpretation is that ambiguities must be construed against the drafter"). Because it is undisputed that HGI drafted Ms. Joy's Employment Agreement (SUF 18-19), this principle of contract construction is alone sufficient to warrant the entry of summary judgment in her favor with respect to her entitlement to her contractual severance.

The Seventh Circuit has also noted that, where a contract contains ambiguities, the court may look to extrinsic evidence to assist in the appropriate construction of the disputed provision. In this regard, the courts distinguish between latent or extrinsic ambiguity, which arises when "the terms are clear taken by themselves, but the surrounding circumstances create inconsistent interpretations," and manifest or intrinsic ambiguity "when the express language of the contract itself is fairly susceptible to more than one reasonable reading." *Bourke v. Dun & Bradstreet Corporation*, 159 F.3d 1032, 1036-37 (7th Cir. 1998). With respect to the former type of ambiguity, courts typically

limit the admission of extrinsic evidence to that deemed "objective" -- e.g., evidence provided by disinterested third parties regarding the meaning of the disputed term, *Bock v. Computer Associates Intern., Inc.*, 257 F.3d 700, 708 n. 1 (7th Cir. 2001) -- while no such limitation applies with respect to a manifest ambiguity. *Bourke*, 159 F.3d at 1037.

Under either standard, the term "cause" as used in Ms. Joy's Employment Agreement is limited to the following circumstances: (1) conviction of a felony which results in material and demonstrable damage to the Company or impairs the value of the employee's services; (2) willful misconduct which result in material and demonstrable damage to the Company; or (3) the theft of Company property. This is not just the construction put forth by plaintiff for purposes of this litigation, it is the construction embraced by the individual who *drafted* the Employment Agreement for HGI as well as the executive who *signed* it on HGI's behalf (SUF 23-33). Literally, all individuals who played a role in the preparation and execution of the document agree upon this construction of the termination provision (*Id.*).[2] *See Bock*, 257 F.3d at 708 (objective evidence of extrinsic ambiguity exists where the evidence shows that both parties to a contract "share[d] the same meaning" of the disputed term).

Moreover, HGI's own Model Employment Agreement reflects a definition of "cause" that is consistent with the definition ascribed to the term by the drafter of Ms. Joy's Employment Agreement (SUF 50-51).[3] Thus, whether the ambiguity is considered extrinsic or manifest (and, as

---

[2] Although HGI has sued Mr. Bassick (the signer of the Employment Agreement), there is nothing to suggest that Mr. Lacey (the drafter) is anything other than a disinterested third party.

[3] HGI has taken the position that the definition of "cause" as used in Ms. Joy's Employment Agreement is affected by HGI's involuntary termination policy (SUF 52). Even that policy, however, supports plaintiff's position. Not only does it fail to mention or define "cause" for termination (SUF 53-54), but it purports to provide that severance and notice pay are not available unless the employee's termination
(continued...)

set forth above, plaintiff submits that the provision is fairly susceptible to more than one reasonable interpretation and therefore manifestly ambiguous), even the objective evidence supports her construction of the termination provision.

HGI has admitted the reasons for its decision to terminate Ms. Joy's employment (that she was allegedly not generating sufficient revenue for the Company (SUF40)), and they clearly do not meet this definition of "cause." Plaintiff is entitled to judgment as a matter of law with respect to her entitlement to her contractual severance.

### III. PLAINTIFF IS ENTITLED TO HER BONUS AS A MATTER OF LAW.

Ms. Joy's Employment Agreement established a floor, a ceiling and a target for the payment of her annual bonus. "Your total annual incentive target will be equal to 60% of your base salary for all future years; and the range around your incentive target will vary from 30% to 100% of your base salary" (SUF 15). From January 1999 until the termination of her employment, Ms. Joy's annual base salary was $210,000 (SUF 14). The record demonstrates that there is no genuine issue of material fact regarding HGI's failure to provide Ms. Joy with her minimum bonus for fiscal years 2001 and 2002: for 2001, she received $36,400 ($26,600 less than her minimum bonus); and for 2002 (the year she was terminated), she received nothing (SUF 47-49).

HGI fired Ms. Joy half-way through the 2002 fiscal year, thus making it impossible for her to be employed when the 2002 bonus was to be paid. It cannot now deny her the *pro rata* bonus to which she is entitled by arguing that, to be eligible for the bonus, she was required to be employed

---

[3](...continued)
occurs "through no fault of the employee" (SUF 55). Here, of course, HGI *did* provide plaintiff with both notice pay and an (albeit inadequate) offer of severance (SUF 36-38), recognizing that Ms. Joy's employment was terminated "through no fault of" her own. That is not "cause" under any definition.

-10-

on the date it was paid. Illinois law does not allow an employer to rely upon such a restriction where it is the employer itself which renders it impossible for the employee to fulfill the condition by firing her. *See In re Handy Andy Home Improvement Centers, Inc.*, No. 95 B 21655, 1997 WL 401583, *4-5 (N.D. Ill. Bankr. July 9, 1997); *Camillo v. Wal-Mart Stores, Inc.*, 221 Ill. App. 3d 614, 621-22, 582 N.E.2d 729, 734 (5th Dist. 1991). *See also Tatom v. Ameritech Corp.*, No. 99 C 683, 2000 WL 1648931, *9 (N.D. Ill. Sept. 28, 2000) (distinguishing *Camillo* for two reasons: (1) the subject bonus plan did not establish an entitlement to a bonus (as it did in *Camillo* and herein); and (2) the employer did not fire the employee (he quit), and the employer therefore did not render it impossible for him to fulfill the condition of employment on the date the bonus was paid).

Having affirmatively prevented Ms. Joy from meeting the stated requirements to obtain her bonus, HGI cannot avail itself of such requirements in defense of her claim for her bonus now. Respectfully, Ms. Joy submits that she is entitled as a matter of law to her minimum bonus payments for fiscal years 2001 and 2002.[4]

## IV. PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST AS A MATTER OF LAW.

Because the amounts due under Ms. Joy's employment agreement are due under a written instrument and represent liquidated sums, she is statutorily entitled to receive prejudgment interest at the rate of 5%. 815 ILCS 205/2. *See Dallis v. Don Cunningham & Associates*, 11 F.3d 713, 718 (7th Cir. 1993) (quoting *Stanley Gudyka Sales Co. v. Lacy Forest Products Co.*, 915 F.2d 273, 279 (7th Cir. 1990)) ("The general rule is that 'litigants are entitled to pre[-]judgment interest if the

---

[4] Ms. Joy seeks, for fiscal year 2001, the difference between her minimum bonus ($63,000) and the amount paid by HGI in May 2002 ($36,400), or $26,600 (SUF 14, 15 & 47). For fiscal year 2002, Ms. Joy seeks the *pro rata* share (one-half) of her target bonus of $126,000, or $63,000 (SUF 48-49). At the very least the record establishes that Ms. Joy is entitled as a matter of law to one-half of her minimum bonus of $63,000, or $31,500, for fiscal year 2002.

damages are liquidated and capable of easy calculation"); *Rebaque v. Forsythe Racing Inc.*, 134 Ill. App. 3d 778, 480 N.E.2d 1338 (1st Dist. 1985) (prejudgment interest correctly awarded where amount of balance due under contract, as opposed to liability for breach, was not disputed); *Finazzo v. Mid-States Finance Co.*, 63 Ill. App. 2d 161, 211 N.E.2d 290 (5th Dist. 1965) (where employer failed to pay employee amount due under contract requiring employee to be paid percentage of earnings of employer, interest allowed on amounts found to be due from date on which they were payable).

### V. PLAINTIFF'S SEVERANCE AND BONUS ARE "WAGES" FOR PURPOSES OF BOTH THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT AND THE ILLINOIS ATTORNEYS FEES IN WAGE ACTIONS ACT, AND PLAINTIFF IS ENTITLED TO RECOVER HER ATTORNEYS FEES INCURRED HEREIN.

Both the Illinois Wage Payment and Collection Act, 820 ILCS 115/2 (the "Wage Act"), and the Illinois Attorneys Fees in Wage Actions Act, 705 ILCS 225/1 (the "Fees Act"), define wages to include overdue severance and bonus payments.[5] *See Anderson v. Illinois Bell Telephone Company*, 961 F. Supp 1208, 1217-18 (N.D. Ill. 1997) (under the Wage Act, "'wages' must be broadly construed to encompass a wide range of compensation due employees," including balance of

---

[5] The Wage Act will trigger certain statutory penalties in the event a judicial direction to pay overdue compensation is not obeyed. 820 ILCS 115/14. The Fees Act provides:

> Whenever a mechanic, artisan, miner, laborer, servant or employee brings an action for wages earned and due and owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he or she has brought the action is justly due and owing, and that a demand was made in writing at least 3 days before the action was brought, for a sum not exceeding the amount so found due and owing, then the court shall allow to the plaintiff a reasonable attorney fee of not less than $10, in addition to the amount found due and owing for wages, to be taxed as costs of the action.

705 ILCS 225/1.

remaining employment term); *Shields v. Associated Volume Buyers, Inc.*, No. 93 C 7620, 1994 WL 110397, *2 (N.D. Ill. March 31, 1994) ("The [Wage] Act was amended, not only to expressly include vacation pay, but to define wages even more broadly to include any compensation due and owing an employee by an employer pursuant to an employment contract"); *Metropolitan Distributors, Inc. v. Illinois Dep't of Labor*, 114 Ill. App. 3d 1090, 449 N.E.2d 1000 (1st Dist. 1983) (severance pay constituted wages or final compensation for purposes of the Illinois Wage Act). Moreover, it is undisputed that plaintiff has made the statutory demand which is a condition precedent to the recovery of fees under the Fees Act. 705 ILCS 225/1 (SUF 58).

Plaintiff was, moreover, an "employee" of HGI as that term is defined in both Acts. Not only is it undisputed that plaintiff's work was at all times directly supervised by Mr. Bassick (SUF 21), but HGI has expressly taken the position herein that the definition of "cause" contained in Ms. Joy's Employment Agreement included termination for "actions or omissions by an employee that are inconsistent with the relationship of employer and employee" (SUF 17; *see also* SUF 22 (Ms. Joy was hired to build an executive compensation practice for HGI)). Thus, in connection with her efforts to recover the compensation due her under the Employment Agreement, Ms. Joy is entitled to recover her attorneys' fees. *See Shramuk v. Snyder*, 278 Ill. App. 3d 745, 750, 663 N.E.2d 468, 472 (2nd Dist. 1996) (associate attorney is employee for purposes of Fees Act); *Johnson v. Figgie Intern., Inc.*, 151 Ill. App. 3d 496, 508-09, 502 N.E.2d 797, 806 (2nd Dist. 1986) (determining that salesman is an employee for purposes of Fees Act, court holds that the term "employee" is to be given "its generally accepted meaning"); *Reiss v. El Bauer Chevrolet Co.*, 96 Ill. App. 2d 266, 238 N.E.2d 619 (4th Dist. 1968) (salesman). *See also Shields v. Associated Volume Buyers, Inc.*, No. 93 C 7620, 1994 WL 110397, *2 (N.D. Ill. March 31, 1994) (noting that "the trend among the courts

has been to expand the definition of employee under the Fee Act," but holding that plaintiff's position as National Executive Director of the defendant group raised question of fact regarding whether he was an "employee" under the Act).

VI. **PLAINTIFF IS ENTITLED TO A FINDING THAT THE HG BERMUDA NON-COMPETITION PROVISION IS UNENFORCEABLE AS A MATTER OF LAW, AND THAT HER TERMINATION AND/OR SUBSEQUENT EMPLOYMENT CANNOT JUSTIFY ANY LOSS OR DIMINUTION OF HER RIGHTS UNDER THE HG BERMUDA SHAREHOLDERS AGREEMENT.**

The issues surrounding Ms. Joy's claims against HG Bermuda have been previously briefed and submitted to the Court for decision. On January 21, 2003, Ms. Joy filed her motion for injunctive relief regarding the alleged non-competition obligation so that she could accept new employment elsewhere. HG Bermuda then moved to dismiss Ms. Joy's amended complaint for lack of jurisdiction and improper venue. Both motions were referred to the Magistrate Judge, who recommended the denial of the motions, without prejudice, pending the completion of discovery (SUF Ex. 6). However, discovery is now closed and HG Bermuda has provided no new relevant evidence.[6]

Ms. Joy cannot accept the job that has been offered to her by another company while this issue remains unresolved. Despite the fact that the Magistrate Judge found the non-competition provision unenforceable as written (*id.* Transcript at 27, 30 ("I don't think it's enforceable as it's written")), HG Bermuda's threat to enforce the provision and the indemnification clause contained in the Shareholders Agreement remains. Ms. Joy has been unemployed since the termination of her

---

[6] Because her ability to accept gainful employment was at issue (Ms. Joy has been (and remains) unemployed since the termination of her employment by HGI), Ms. Joy timely submitted her objections to Magistrate Judge's report and recommendation on March 20, 2003. HG Bermuda did not respond to the objections.

employment by HGI, and she has been effectively precluded from accepting a position offered to her more than five months ago.

For the reasons stated herein and in her submissions in connection with her motion for injunctive relief,[7] plaintiff respectfully requests an expedited finding that the HG Bermuda non-competition provision is unenforceable as a matter of law, that she is free to accept the employment that has been offered her, and that her termination by HGI and/or her subsequent employment cannot justify any loss or diminution of her rights under the HG Bermuda Shareholders Agreement.

### *Conclusion*

Accordingly, for the reasons stated herein and in the accompanying materials, plaintiff Lynn A. Joy respectfully prays for the entry of summary judgment in her favor and against defendant Hay Group, Inc., and HG (Bermuda) Limited.

Respectfully submitted,

LYNN A. JOY

By: _____
One of Her Attorneys

Luke DeGrand
Tracey L. Wolfe
Susan E. Cox
LUKE DEGRAND & ASSOCIATES, P.C.
20 North Clark Street
Suite 1450
Chicago, Illinois 60602
(312) 236-9200 (Telephone)
(312) 236-9201 (Facsimile)

---

[7] (1) Plaintiff's Motion for Injunctive Relief in Connection with Alleged Non-Competition Obligation (with exhibits); (2) Plaintiff's Supplemental Memorandum in Support of Plaintiff's Motion for Injunctive Relief in Connection with Alleged Non-Competition Obligation (with exhibits); (3) Plaintiff's Reply in Support of Motion for Injunctive Relief and Response to HG Bermuda's Motion to Dismiss (with exhibits); and (4) Plaintiff's Objections to Report and Recommendation of Magistrate Judge (with exhibits).